IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTINE C. SHUBERT, | : | |
| CHAPTER 7 TRUSTEE | : | |
| Plaintiff, | : | |
| | : | MISC MATTER |
| v. | : | |
| | : | NO. 14-176 |
| LAW OFFICES OF | : | |
| PAUL J. WINTERHALTER, AND | : | |
| PAUL J. WINTERHALTER | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

RUFE, J.                                                                 May 8, 2015

Plaintiff Christine C. Shubert, trustee of the bankruptcy estate of Joseph Grasso, filed this case as an adversary proceeding in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court"). Defendants Paul J. Winterhalter and his law offices (the "Firm"), proceeding *pro se*, have moved to withdraw the reference from the Bankruptcy Court and transfer the case to this Court.

## I.      FACTUAL AND PROCEDURAL HISTORY

On February 6, 2012, Joseph Grasso, a businessman with interests in numerous companies, filed for bankruptcy. On February 7, 2012, Defendants filed an application pursuant to 11 U.S.C. § 327(a) to represent Mr. Grasso as debtor-in-possession and assist him in performing his duties under the Bankruptcy Code. As required by § 327(a), Defendants' application represented that Defendants were disinterested persons who did not hold an interest materially adverse to the bankruptcy estate. The Bankruptcy Court approved the application and,

as counsel to the debtor-in-possession, Defendants acquired "fiduciary duties to the estate, including ensuring that the rights of creditors are protected."[1]

Plaintiff alleges that Defendants repeatedly breached their duties as counsel for the debtor-in-possession and aided and abetted Mr. Grasso in breaching his duties as debtor-in-possession. Defendants allegedly failed to counsel Mr. Grasso regarding his obligation to disclose his assets, including his interest in several businesses, and allegedly "substantially assisted" Mr. Grasso in improperly transferring more than $488,494.09 from his businesses in order to pay the personal expenses of Mr. Grasso and his wife.[2] Plaintiff also alleges that Defendants were "involved" in Mr. Grasso's undisclosed purchase of a proof of claim filed against the estate by the Wilmington Savings Fund Society, FSB (the "WSFS claim") and thereby "they ceased to be disinterested, they actively put the Debtor's personal interests ahead of the estate's collective interests, they failed to disclose the estate's opportunity in purchasing the WSFS claim at a discount, they failed to disclose their involvement in the transaction, and in fact, misrepresented their involvement to the Court."[3]

On December 28, 2012, Defendants filed a Second Interim and Final Application for Compensation in the Bankruptcy Court in order to obtain payment for the fees and costs that the Firm had incurred in its representation of Mr. Grasso during the period of July 1, 2012 to October 31, 2012. On February 5, 2013, one of Mr. Grasso's creditors, Madison Capital Company, objected to the Firm's application pursuant to 11 U.S.C. § 328(c) and requested disgorgement of all fees previously paid to the Firm pursuant to 11 U.S.C. § 330(a)(5) on the basis that Mr. Winterhalter had been improperly involved in the purchase of the WSFS claim. Ms. Shubert, acting as trustee of the bankruptcy estate, joined in Madison's objection.

---

[1] *In re N. John Cunzolo Associates, Inc.*, 423 B.R. 735, 739 n. 5 (Bankr. W.D. Pa. 2010) (collecting cases).
[2] Am. Compl. at ¶ 13; *see also* Am. Compl. at ¶ 17 (listing alleged transfers).
[3] Am. Compl. at ¶ 27.

The Firm's fee application subsequently became the subject of extensive litigation in the Grasso bankruptcy, which culminated in the Bankruptcy Court's memorandum opinion and order dated January 17, 2014 denying the fee application, ordering disgorgement of all fees previously paid to the Firm, and referring Mr. Winterhalter to the appropriate body for professional discipline.[4] Mr. Winterhalter timely appealed to this Court, and by memorandum opinion and order dated July 10, 2014, this Court vacated the Bankruptcy Court's January 17, 2014 order and remanded the fee application to the Bankruptcy Court for further proceedings.[5]

On February 10, 2014, while Mr. Winterhalter's appeal was pending, Plaintiff filed this case as a separate adversary proceeding in the Bankruptcy Court. The amended complaint raises five claims against Defendants: 1) Breach of Fiduciary Duty; 2) Negligence; 3) Aiding and Abetting Breach of Fiduciary Duty; 4) Fraudulent Concealment; and 5) Conspiracy to Commit Fraudulent Concealment. Defendants answered the complaint and filed a motion to dismiss for lack of subject matter jurisdiction, which was denied by the Bankruptcy Court on June 27, 2014. Defendants then moved to withdraw the reference and transfer the adversary proceeding to this Court. To date, the Bankruptcy Court has not made any further ruling on the Firm's application for fees in the Grasso bankruptcy or on any matter in the adversary proceeding filed by Plaintiff.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 157(a) and the Standing Order of Reference for this District, "any and all proceedings arising under Title 11 or arising in or related to a chapter 7, 11, 12, or 13 case under Title 11 are and shall be referred to the Bankruptcy Judges for the district." Section 157(d) provides that "the district court may withdraw, in whole or in part, any case or

---

[4] Exh. E to Pl.'s Resp. in Opp.
[5] The fee litigation is described in this Court's memorandum opinion and order ruling on the appeal. *See In re Grasso*, 14-cv-1741, 2014 WL 3389119 (E.D. Pa. Jul. 11, 2014).

proceeding referred under this section, on its own motion or the timely motion of any party, for cause shown."

Whether a party has shown cause for withdrawal of reference is at the discretion of the district court.[6] As a threshold matter, the district court determines whether the proceeding at issue is "core" or "non-core."[7] Pursuant to 28 U.S.C. § 157(b) and (c), bankruptcy courts may enter final judgment in core proceedings, whereas in non-core proceedings the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court, which must review *de novo* any objections filed by the parties before entering final judgment. Regardless of whether a proceeding is core or non-core, the Bankruptcy Court may conduct a jury trial only with the consent of the parties.[8] Thus, the district court may consider whether any party has demanded a jury trial and is constitutionally entitled to trial by jury in determining whether to withdraw the reference.[9] District courts also consider factors including: "(1) promoting uniformity of bankruptcy administration; (2) reducing forum shopping; (3) fostering economical use of resources; (4) expediting the bankruptcy process; and (5) timing of the request for withdrawal."[10]

## III.    DISCUSSION

Defendants contend that withdrawal of reference is warranted for three reasons: 1) this case is a "non-core" proceeding; 2) the Bankruptcy Court is not constitutionally permitted to enter final judgment on Plaintiff's claims; and 3) Defendants have a Seventh Amendment right to a jury trial. Defendants contend that withdrawal of reference will therefore avoid "unnecessary

---

[6] *In re Cinematronics*, 916 F.2d 1444, 1451 (9th Cir. 1990).
[7] *In re Pelullo*, 1997 WL 535155 at *2 (E.D. Pa. Aug. 15, 1997) (citing *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Philadelphia Training Center Corp.*, 155 B.R. 109, 112 (E.D. Pa. 1993)).
[8] 28 U.S.C. § 157(e).
[9] *Feldman v. ABN AMRO Mortgage Grp. Inc.*, 515 B.R. 443, 446 (E.D. Pa. 2014).
[10] *Id.* at 445-46 (citing *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990)).

duplication of efforts by the District Court, since the District Court would be required to review the Bankruptcy Court's orders de novo and conduct a jury trial without the benefit of having overseen pretrial matters."[11]

### A.  Core vs. Non-Core

"A proceeding is 'core' if it 'invokes a substantive right provided by title 11 or if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'"[12] A non-exclusive list of core proceedings is contained in 28 U.S.C. § 157(b)(2), including matters concerning the administration of the bankruptcy estate. Non-core proceedings are all other proceedings that are "related to a case under title 11."[13]

In *In re Seven Fields Development Corp.* ("*Seven Fields*"), the Third Circuit held that state law malpractice claims against bankruptcy court-appointed professionals for post-bankruptcy petition conduct are a core proceeding concerning the administration of the bankruptcy estate.[14] Similarly, Plaintiff here alleges that Defendants breached their duties as bankruptcy court-appointed professionals and aided and abetted Mr. Grasso in breaching his duties as debtor-in-possession; these claims arise from post-petition conduct that bears directly on the administration of the bankruptcy estate. Thus, this case is a core proceeding.[15]

### B.  The Bankruptcy Court's Constitutional Authority to Enter Final Judgment

Defendants contend that even if Plaintiff's claims are a core proceeding, the Bankruptcy Court lacks the constitutional authority to enter final judgment on these claims pursuant to the

---

[11] Defs. Mot. at ¶ 6.
[12] *In re Pelullo*, 1997 WL 535155 at *2 (quoting *Torkelsen v. Maggio*, 72 F.3d 1171, 1178 (3d Cir. 1996)).
[13] 28 U.S.C. § 157(c)(1).
[14] *In re Seven Fields Development Corp.*, 505 F.3d 237, 262 (3d Cir. 2007).
[15] Defendants contend that *In re U.S. Mortg. Corp.*, 2012 WL 1372284 (D.N.J. Apr. 19, 2012), an unreported case from the District of New Jersey, stands for the proposition that state law claims of fraud, civil conspiracy and aiding and abetting civil conspiracy are non-core proceedings. However, *In re U.S. Mortg. Corp.* does not involve claims against bankruptcy court-appointed professionals, and the issue of whether these claims were non-core was not before the court in that case because the plaintiff conceded that these claims were non-core. *See id.* at *1-2. Thus, *In re U.S. Mortg. Corp.* is not relevant to this case.

Supreme Court's ruling in *Stern v. Marshall*.[16] In *Stern*, the Supreme Court held that Article III of the United States Constitution prohibits bankruptcy courts from entering final judgment in certain core proceedings, which have come to be known as "*Stern* claims."[17] At issue in *Stern* was a state-law counterclaim by the debtor against a creditor, which although designated as core by § 157(b)(2)(C),[18] "was not related to the creditor's claims against the estate or the underlying bankruptcy in any way."[19] Whether *Stern* extends to any other class of core proceedings remains unsettled in this Circuit.[20] *Stern* itself, however, provides that when "an issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process," Article III permits bankruptcy courts to enter final judgment.[21]

This case stems from the Grasso bankruptcy. The alleged misconduct at issue in this case involves breaches of Defendants' duties to the bankruptcy estate and to counsel Mr. Grasso regarding the administration of the bankruptcy estate. As bankruptcy court-appointed professionals, Defendants' conduct was also regulated by the Bankruptcy Code, including § 327(a)'s requirement that professionals remain disinterested, and the sanctions of non-payment of fees and disgorgement of fees provided by §§ 328(c) and 330(a)(5). In addition, the *Seven Fields* court emphasized the importance of the bankruptcy court's ability to "'to police the fiduciaries,'" and that "'[s]upervising the court-appointed professionals also bears directly on the distribution of the debtor's estate'" because competent estate administration ensures the

---

[16] 131 S.Ct. 2594 (2011).
[17] *Executive Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2168 (2014) (citing *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).
[18] *Stern*, 131 S.Ct. at 2608.
[19] *In re New Century Holdings, Inc.*, 544 Fed. App'x 70, 73 (3d Cir. 2013) (*per curiam*) (citing *Stern v. Marshall*, 131 S.Ct. 2594 (2011)).
[20] *See Feldman*, 515 B.R. at 448 (collecting cases illustrating disagreement among trial courts in the Third Circuit regarding applicability of *Stern* to fraudulent transfer claims).
[21] *Stern*, 131 S.Ct. at 2618.

availability of funds to pay creditors.[22] Although *Seven Fields* predates *Stern*, these concerns

weigh against treating Plaintiff's claims as *Stern* claims. For these reasons, the Court determines

that *Stern* does not deprive the Bankruptcy Court of constitutional authority to enter final

judgment on Plaintiff's claims.

### C.  Defendants' Right to a Jury Trial

Defendants contend that the Seventh Amendment confers upon them the right to a jury

trial on Plaintiff's claims, which must be conducted in this Court because Defendants will not

consent to a jury trial in the Bankruptcy Court. In *Granfinanciera, S.A. v. Nordberg*, the Supreme

Court interpreted the Seventh Amendment to confer the right to a jury trial on claims brought in

bankruptcy court when the claims are legal rather than equitable in nature.[23] Common law claims

for money damages, such as those brought by Plaintiffs, are paradigmatic examples of legal

claims. The issue, however, is whether Defendants subjected themselves to the equitable

jurisdiction of the Bankruptcy Court by submitting an application for attorney's fees, and if so,

whether Plaintiff's claims fall within that jurisdiction.

Although Defendants submitted an application for fees to the Bankruptcy Court,

Defendants contend that they retain the right to a jury trial because they did not file a proof of

claim. A proof of claim is a creditor's formal assertion of a right to payment from the bankruptcy

estate.[24] By filing a proof of claim, the creditor "triggers the process of allowance and

disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power."[25]

The claims allowance process includes the equitable power "to disallow [the creditor's] claims,

---

[22] *In re Seven Fields Development Corp.*, 505 F.3d at 261-62 (quoting *In re Southmark*, 163 F.3d 925, 931 (5th Cir. 1999)).
[23] 492 U.S. 33, 55 (1989).
[24] *See* 11 U.S.C. § 501 (stating who may file a proof of claim); *see also* 11 U.S.C. § 101(5) (defining "claim" as a right to payment).
[25] *Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) (*per curiam*) (internal quotations omitted).

even though the debtor's opposing counterclaims are legal in nature and the Seventh Amendment would have entitled creditors to a jury trial had they not tendered claims against the estate."[26] Thus, "[i]t is clear that a creditor who submits a proof of claim against the bankruptcy estate has no right to a jury trial on the issues raised in defense of such a claim," including in a subsequent action in which those issues are raised as the basis of a claim for money damages.[27]

Although a professional's application for fees is governed by a different section of the Bankruptcy Code from a creditor's proof of claim,[28] a professional's application for fees is also a request for payment from the bankruptcy estate. In *Billing v. Ravin, Greenberg & Zackin, P.A.*, recognizing the essential similarity of a proof of claim and an application for fees, the Third Circuit reasoned that "[c]learly, if the attorneys in this case had demanded a jury trial, their request would be refused on the ground that they had filed a claim for fees with the bankruptcy court."[29] In *In re Simmons*, which to the Court's knowledge is the only reported decision to rule on this issue, the United States Bankruptcy Court for the Western District of Texas relied upon *Billing* to hold that an attorney's filing of a fee application forfeited his right to a jury trial.[30] For these reasons, the Court determines that Defendants subjected themselves to the equitable jurisdiction of the Bankruptcy Court by filing an application for fees.

Plaintiff's claims for money damages in the adversary proceeding are sufficiently related to her objections to the fee application to fall within the Bankruptcy Court's equitable jurisdiction. In *Billing*, the Third Circuit held that when there is a "close connection" between the

---

[26] *Granfinanciera*, 492 U.S. at 59, n. 14.

[27] *See Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1250 (3d Cir. 1994) (stating the quoted language in the context of determining the right to a jury trial in a subsequently filed professional malpractice action) (citing *Langenkamp*, 498 U.S. at 45 (holding that creditor who had filed proof of claim had no right to a jury trial in subsequently filed adversary proceeding asserting preference claim)).

[28] *Compare* 11 U.S.C. § 330 (governing compensation of officers, including professionals) *with* 11 U.S.C. §§ 501-02 (governing filing and allowance of creditors's proofs of claims).

[29] *Billing*, 22 F.3d at 1253.

[30] *In re Simmons*, 205 B.R. 834, 850 (Bankr. W.D. Tex. 1997) (citing *Billling v. Ravin, Greenberg, & Zackin, P.A.*, 22 F.3d 1242 (3d Cir. 1994)).

objections to a fee request and the claims subsequently raised in an adversary proceeding, the claims raised in the adversary proceeding "are part of the process of allowance and disallowance of claims," and therefore there is no right to a jury trial.[31] In her objection to the fee request, Plaintiff alleged that Defendants breached their duties to the bankruptcy estate through their involvement in the purchase of the WSFS claim. Defendants' alleged involvement in the purchase of the WSFS claim is also a central issue in this case. It is worth noting that as an attorney specializing in bankruptcy law, Mr. Winterhalter knew or should have known of the risk of forfeiting his jury trial rights when he filed the application for fees. Because of the close connection between Plaintiff's claims in this case and Plaintiff's objections to Defendants' fee application, Plaintiff's claims fall within the Bankruptcy Court's equitable jurisdiction and Defendants are not entitled to a trial by jury.

### D.  Discretionary Factors

In light of this Court's determinations that the Bankruptcy Court is statutorily and constitutionally authorized to enter final judgment on Plaintiff's claims, and that Defendants do not have a right to a jury trial, the discretionary factors weigh against withdrawal of the reference. The uniformity of bankruptcy administration will be enhanced by the adjudication of the Grasso bankruptcy and the trustee's claims against Defendants in the same court. The bankruptcy court is intimately familiar with the history of this case, and although certain of its rulings may have encouraged Defendants to seek another forum, the Court does not consider that a basis to assume jurisdiction. Although Defendants contend that Plaintiff's state-law claims will require the Bankruptcy Court to become acquainted with unfamiliar law, the bankruptcy courts regularly adjudicate state-law claims and this case also involves numerous issues of bankruptcy law. Finally, the timing of Defendants' request, following several months of litigation in the

---

[31] *Billing*, 22 F.3d at 1252.

9

adversary proceeding and the receipt of an adverse ruling from the Bankruptcy Court, also cuts against withdrawal of reference.

**IV.    CONCLUSION**

For the reasons stated above, Defendants' motion to withdraw reference will be denied. An appropriate order follows.